# FOR PUBLICATION

**APPELLANT PRO SE:**

**KELVIN T. BROWN**
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE:**

**KATHLEEN A. DeLANEY**
**AMANDA COUTURE**
DeLaney & DeLaney
Indianapolis, Indiana

FILED

Jul 24 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KELVIN T. BROWN, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1111-CT-648 |
| | ) | |
| INDIANAPOLIS HOUSING AGENCY, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

**APPEAL FROM THE MARION SUPERIOR COURT**
The Honorable David A. Shaheed, Judge
Cause No. 49D01-0709-CT-37992

**July 24, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Kelvin Brown was employed by the Indianapolis Housing Agency ("IHA"). After an investigation by an IHA officer, IHA concluded that Brown had been conducting personal business during work hours and terminated Brown's employment. Thereafter, Brown was charged with ghost employment, official misconduct, and deception, but the charges were ultimately dismissed voluntarily by the prosecutor. Brown then sued IHA for malicious prosecution and intentional infliction of emotional distress. The trial court granted summary judgment for IHA.

We conclude that IHA had a qualified privilege to report Brown's suspected criminal conduct. The designated evidence does not show that the privilege was abused, and the privilege bars Brown's claim for both malicious prosecution and intentional infliction of emotional distress. Much of the same evidence also negates elements of Brown's claims. Therefore, we affirm the judgment of the trial court.

**Facts and Procedural History**

In 1999, Brown began working for IHA as a Section 8 housing inspector.[1] Brown's job was to inspect properties that were receiving public funds to insure that the properties were in compliance with the Department of Housing and Urban Development's housing

---

[1] IHA Officer Stephen Golden described the Section 8 program as follows:
The Indianapolis Section 8 program is designed to help low income families rent apartments or homes in the private market in both Marion County Indiana and in a certain radius of the contiguous counties to Marion County. Under this program, HUD [Department of Housing and Urban Development] provides funds to IHA for rent subsidy on behalf of eligible families, pursuant to Section 8 of the United States Housing Act of 1937 (42 United States Code 1437f).
Appellee's App. at 42.

quality standards. Inspectors spent most of their work day in the field. IHA provided inspectors with a car to use during work hours. Inspectors were not allowed to take the cars home at night or use them for personal business. In May 2002, IHA installed GPS devices in the cars.

In addition to being an inspector, Brown owned some rental properties, including one on Winthrop Street and one on South Harris Street in Indianapolis. These properties were not part of the Section 8 program and had nothing to do with Brown's work for IHA.

IHA has its own police officers. Beginning in 2002, IHA officers were conducting an ongoing investigation into Section 8 inspectors. In 2004, a series of events occurred that led IHA to believe that Brown was conducting personal business related to his rental properties during work hours.

On June 7, 2004, Brown appeared in the Marion County Small Claims Court, located in the City-County Building, for a case relating to one of his rental properties. Brown submitted a form requesting leave dated June 8, 2004. Brown asserts that he wrote down the wrong date and actually submitted the form on or before June 7. His request was not granted by June 7, so he reported to work that day. During his lunch break, he drove to the 300 block of East Market Street. He quickly got something to eat and then walked to the City-County Building for his court hearing.

GPS data confirms that Brown's car was stopped in the 300 block of East Market Street from 1:25 p.m. to 1:53 p.m., which is within the time frame that he was permitted to take a lunch break. IHA's inspection log also shows that Brown conducted five inspections

3

on June 7. Brown's supervisor, Dorothy Henderson, approved Brown's request for leave after the fact. Despite having actually worked on June 7, Brown stated on his time card that he was "Off" that day. Appellee's App. at 45.

Later, IHA received an anonymous tip that Brown had been in small claims court on June 29, 2004. Brown's time card states that he worked from 8:00 a.m. to 12:00 p.m. and 1:00 p.m. to 5:00 p.m. that day. GPS data shows that he did not start driving his car until 9:39 a.m. He then drove to the area of his rental property on South Harris Street. IHA's Inspection Status Report shows that no inspections were scheduled in that area. Brown asserts that IHA had an informal policy of conducting "drive-by" inspections to check on the exterior condition of Section 8 properties. He further claims that they were not required to make reports on drive-by inspections unless there was a problem. Brown claims that he was doing a drive-by inspection on South Harris Street that day and did not stop at his rental property.

In September 2004, IHA suspended Brown for five days. Based on the events of June 7 and 29, the IHA found that he had violated the following rules: failure to devote full attention to duties for the entire work period; abuse, misuse, or destruction of equipment, facilities, supplies, records, or funds; unauthorized use of equipment, facilities, supplies, records, or funds; leaving the work area during work hours without prior authorization from a supervisor; and making a false report or statement related to the job.

On October 25, 2004, Brown again had a hearing in small claims court. Brown signed in to work at 8:00 a.m. Henderson was not at work. Brown asserts that when Henderson was

4

gone, Danitra Alexander was the acting supervisor. Brown claims that he asked Alexander for permission to go to court, that she gave her approval, and that she saw him place his request for leave on Henderson's desk. Brown did not sign out when he left to attend his court hearing. Alexander confirmed that she remembered Brown asking for permission to attend court.

A few days later, Brown was terminated. The Corrective Action Form indicates that IHA found that his conduct on October 25 was in violation of the rules about devoting full attention to duties, leaving work, and making a false statement. Brown filed a union grievance on the ground that his discipline was not progressive. On November 24, 2004, the grievance was denied because Brown had previously been disciplined for similar misconduct.

IHA's investigation of Brown culminated in a probable cause affidavit, which was written by Officer Stephen Golden. On January 6, 2005, Brown was charged in Marion Superior Court with ghost employment, official misconduct, and two counts of deception. The charges were based on allegations that he conducted personal business during work hours, used an IHA vehicle for personal reasons, and made false statements on his time cards. On December 15, 2006, the State filed a motion to dismiss the charges. The form filed by the prosecutor listed "evidentiary problems" as the reason for dismissal. *Id*. at 59. An affidavit by Mary Ann Fleetwood, a deputy prosecutor who had been assigned to Brown's case, says that the State "had every intention of prosecuting Kelvin Brown," and that "as a result of evidentiary issues, including the unavailability of essential witnesses," the case was dismissed. *Id*. at 62.

5

On September 7, 2007, Brown sued IHA for malicious prosecution and intentional infliction of emotional distress. On April 11, 2011, IHA filed a motion for summary judgment, a brief in support, and designated evidence. Brown filed a response and designation of evidence on May 31, 2011. On July 15, 2011, the trial court granted summary judgment for IHA. Brown filed a motion to correct error, which the trial court denied. Brown now appeals.

**Discussion and Decision**

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). Our standard of review is well settled:

> In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper.

*Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 687 (Ind. Ct. App. 2006) (citations omitted). "In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials." *Kozlowski v. Lake Cnty. Plan Comm'n*, 927 N.E.2d 404, 408 (Ind. Ct. App. 2010), *trans. denied*.

IHA advances several reasons why summary judgment was appropriate, one of which we find to be dispositive of both Brown's malicious prosecution claim and his intentional infliction of emotional distress claim: whether IHA had a qualified privilege to make a

6

criminal complaint against Brown.

In *Williams v. Tharp*, our supreme court stated:

A qualified privilege "applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he had a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty."

914 N.E.2d 756, 762 (Ind. 2009) (quoting *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992)). The court further noted that it is "well established that in Indiana, communications made to law enforcement to report criminal activity are qualifiedly privileged." *Id.* (quoting *Kelley v. Tanoos*, 865 N.E.2d 593, 601 (Ind. 2007)). The purpose of the privilege is to enhance public safety by facilitating the investigation of suspected criminal activity. *Id.* at 762-63. The defendant, here IHA, has the burden of showing that its statements fall within the privilege. *Id.* at 762. The plaintiff then has the burden of overcoming the privilege by showing that it has been abused. *Id.* "When speaking of abuse, 'the essence of the concept is not the speaker's spite but his abuse of the privileged occasion by going beyond the scope of the purposes for which privilege exists.'" *Id.* (quoting *Holcomb v. Walter's Dimmick Petroleum, Inc.*, 858 N.E.2d 103, 106 (Ind. 2006)). The privilege has been abused if: "(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Id.* at 763-64.

The privilege has been applied to claims of defamation, false imprisonment, intentional infliction of emotional distress, and negligence. *Id.* at 769. We conclude that the privilege also applies to malicious prosecution, which is analogous to the defamation claim at

7

issue in *Williams*. In *Williams*, the plaintiffs, Sanford Kelsey and Thomas Williams, went to a Papa John's restaurant to pick up an order. Kelsey was wearing a black fanny pack with silver reflective material, and he reached into the fanny pack to retrieve his wallet. Kelly Tharp, a Papa John's employee, saw Kelsey reach for his waist and believed that he saw Kelsey pull out a gun. Tharp exited the building and told a passerby that someone inside had pulled out a gun. The passerby called the police, who detained Kelsey and Williams, but did not find a gun in their possession. Kelsey and Williams sued Papa John's and Tharp for a variety of torts, including defamation. Our supreme court stated, "As a defense to defamation, the qualified privilege operates not to 'change the actionable quality of the words published, but merely [to] rebut[ ] the inference of malice that is [otherwise] imputed." *Id*. at 762 (quoting *Holcomb*, 858 N.E.2d at 106).

Like the defamation claim in *Williams*, Brown's malicious prosecution claim arises out of the reporting of suspected criminal conduct. As with defamation, malice is an element of malicious prosecution:

> There are four elements of a malicious prosecution claim: (1) the defendant [in this case, IHA] instituted or caused to be instituted an action against the plaintiff [Brown]; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor.

*City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). Malice may be inferred from a total lack of probable cause, the failure to make a reasonable or suitable inquiry, or a showing of personal animosity. *Kroger Food Stores, Inc. v. Clark*, 598 N.E.2d 1084, 1089 (Ind. Ct. App. 1992). These grounds for inferring malice are similar to the grounds for

8

finding that the privilege to report suspected criminal conduct has been abused. Therefore, we conclude that the privilege applies equally to Brown's claim of malicious prosecution.

We turn then to whether the designated evidence raises a genuine issue of material fact regarding whether the privilege was abused. We conclude that it does not. Brown does not contend that there was excessive publication of his allegedly criminal conduct. As to ill will, Brown believes that IHA's attorney, Pat Chavis, harbored ill will toward him because he "had complained about perceived nepotism involving … Chavis." Appellant's Br. at 12. The probable cause affidavit does not mention Chavis. There is no indication that Officer Golden or the prosecutor conferred with Chavis. Brown's assertion that Chavis would have been the only person with authority to initiate criminal charges against him is pure speculation.

Brown also argues that IHA harbors ill will against him because after he was terminated, he "sent an e-mail to the agency voicing his displeasure for being terminated and revealing unethical practices by management." *Id*. In support, Brown cites a document that appears to be a taped statement that Officer Golden made to his attorney in the criminal case. Regarding the e-mail, Officer Golden states:

> The only other thing that [I] didn't include in that was a[n] email that was forwarded to me after he left, after Mr. Brown left his employment…. I didn't include it in the evidence inventory[;] frankly it hurts him more than it helps him[. It's] just a lot of wild ramblings and allegations.

Appellee's App. at 77. This evidence undermines rather than supports Brown's argument. According to Officer Golden, the agency forwarded the e-mail to him to determine whether it should be part of his investigation, and Officer Golden decided not to include it even though

9

he felt that it was damaging to Brown.

As to whether the report of alleged criminal conduct was made without belief or grounds for belief in its truth, our supreme court stated that "merely arguing about what the speaker should have known is insufficient to show that the speaker made a statement 'without belief … in its truth.'" *Williams*, 914 N.E.2d at 766 (quoting *Bals*, 600 N.E.2d at 1356). The privilege can be rebutted by showing that the speaker told "a deliberate lie." *Id.* This may be proven circumstantially if there is an "absence of any discernible basis for the truth of the matter." *Id.*

Brown asserts that "[i]n the instance of October 25, 2004 the probable cause affidavit stated that Mr. Brown never turned in a benefit leave slip[;] however it turns out that this evidence was withheld deliberately." Appellant's Br. at 10. In his brief, Brown quotes a lengthy passage purportedly from Alexander's deposition in which she states that she placed the form on Henderson's desk and saw her pick it up. Brown also references a taped statement given by Henderson in which she supposedly denied ever seeing the form. From this evidence, Brown infers that Henderson lied about receiving the form and withheld it from Officer Golden. Brown did not file an appendix. IHA did file an appendix, but it does not include a taped statement by Henderson or the portion of Alexander's deposition that Brown relies on. The appellee's appendix does include the probable cause affidavit completed by Officer Golden, which states, "Brown claimed to his supervisor, Dorothy Henderson, that he had left a benefit leave form on her desk prior to leaving. No such document was found, and any excuse from work must be approved in advance." Appellee's

10

App. at 47. Thus, Officer Golden did not allege that Brown had not turned in a slip, but merely stated that the document had not been found; in other words, Brown's contentions could not be confirmed.

Brown accuses Officer Golden of saying in his taped statement that "he felt that there was no need to speak with my supervisor or anybody in my department" and that it was not "important for him … to investigate the allegations that he was making against me." Appellee's App. at 29, 31. A review of the transcript of the taped statement indicates that Officer Golden said no such thing. The pages to which Brown cites establish, at worst, that Officer Golden failed to elicit some information that might have supported Brown's claim that some of the personal business was conducted during breaks that he was authorized to take. This evidence does not show that Officer Golden deliberately lied, was so obviously mistaken that he could not have believed that the statements in the probable cause affidavit were true, or failed to conduct a reasonable investigation.

The probable cause affidavit reflects that Officer Golden took the following steps in investigating Brown's conduct: (1) reviewed GPS data from the vehicle that Brown drove for work; (2) researched Brown's criminal record; (3) reviewed previous incidents that resulted in corrective administrative action against Brown; (4) confirmed that Brown had signed a form indicating that he had received the IHA employee policies and procedures manual; (5) confirmed that Brown had signed a form indicating his understanding that IHA vehicles were not to be used for personal purposes; (6) reviewed a complaint against Brown made via IHA's fraud hotline; (7) confirmed that Brown had been in court on June 7, June

11

29, and October 25, 2004, by obtaining court records; (8) reviewed Brown's timecards; (9) reviewed Section 8 inspection log reports to determine which properties he had inspected; (10) reviewed Section 8 inspection status reports to determine which properties Brown was assigned to inspect; (11) reviewed sign-in sheets; (12) attempted to locate the leave request form that Brown claimed that he left on Henderson's desk; and (13) reviewed a complaint made against Brown via the Mayor's Action Center. Brown does not appear to contest any of this evidence, but merely offers an alternative explanation for his conduct. That IHA did not reach the same conclusion about Brown's conduct is insufficient to show that it abused the privilege for reporting suspected criminal conduct. Therefore, we conclude that the privilege bars Brown's claims for malicious prosecution and intentional infliction of emotional distress.

For essentially the same reasons, Brown cannot establish the element of malice in his claim for malicious prosecution. Nor can he establish the elements of intentional infliction of emotional distress.

> The elements of the tort are that the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another. The requirements to prove this tort are "rigorous." We quoted the following comment from the Restatement with approval in *Bradley v. Hall*:
>
> > The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or by a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so

12

> outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> 720 N.E.2d 747, 752-53 (Ind. Ct. App. 1999) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). IIED is found where conduct exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind.

*Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). We conclude that, as a matter of law, the designated evidence does not establish that IHA's conduct rose to the level of extreme and outrageous. Therefore, we affirm the trial court's grant of summary judgment for IHA.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.

13