

FILED

Dec 31 2018, 5:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

F. Anthony Paganelli
Thomas D. Perkins
Stephanie L. Grass
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Brian P. Williams
Patrick C. Thomas
Kahn, Dees, Donovan & Kahn
LLP
Evansville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Benjamin P. Ingram and Ben's Quarry, LLC,

*Appellants-Plaintiffs,*

v.

Diamond Equipment, Inc.,

*Appellee-Defendant.*

December 31, 2018

Court of Appeals Case No.
18A-CT-15

Appeal from the Vanderburgh
Superior Court

The Honorable Mary Margaret
Lloyd, Judge

Trial Court Cause No.
82D05-1510-CT-5582

**Brown, Judge.**

[1] Benjamin P. Ingram ("Ingram") and Ben's Quarry, LLC ("Ben's Quarry") brought this cause of action for malicious prosecution and now appeal the entry of summary judgment in favor of Diamond Equipment, Inc. ("Diamond"). We affirm.

*Facts and Procedural History*

[2] In 2005, Diamond sold Ingram Enterprises, LLC ("Ingram Enterprises") heavy equipment at a purchase price in excess of $1.2 million, and Ingram Enterprises later defaulted on its payment obligations. In 2007, Ingram Enterprises sold its business to Ingram Quarry, LLC ("Ingram Quarry"), and Ingram Quarry assumed Ingram Enterprises' debt to Diamond. On September 29, 2009, Diamond filed suit against Ingram Quarry in Marion County in cause number 49D03-0909-CT-44859 (the "Marion County Lawsuit") to recover the unpaid balance from the 2005 sale. On October 19, 2010, Diamond filed a motion for summary judgment against Ingram Quarry, which filed a cross-motion for summary judgment on December 6, 2010.

[3] On January 18, 2011, Ingram filed papers with the Indiana Secretary of State to form Ben's Quarry, and the following day Ingram purchased certain assets from Ingram Quarry for approximately $1.4 million. According to the operating agreement of Ben's Quarry, Ingram was a founding member. In February 2011, a closing for the sale of assets took place at the office of Title Plus! in Bloomington "roughly three days before [a] hearing on the motion[s] for summary judgment." Appellants' Appendix Volume VI at 237.

[4] In late March and early April 2011, Diamond retrieved the heavy equipment from the property of Ben's Quarry, the "original site of Ingram Quarry's quarry operation," and sold it in August or September 2011 for salvage value. Appellants' Appendix Volume V at 37. In September 2011, the court entered summary judgment in favor of Diamond and against Ingram Quarry and entered a monetary judgment of $907,889.81 in favor of Diamond.

[5] On October 6, 2011, Diamond filed a motion for proceedings supplemental to execution against Ingram Quarry, which alleged that the judgment remained wholly unsatisfied and outstanding, as well as interrogatories and requests for production that contained Interrogatory No. 10, which inquired into "any liens or security interests against any of the foregoing inventory, accounts, equipment or assets." Appellants' Appendix Volume VIII at 22. On October 12, 2011, Diamond filed an Amended Verified Motion for Proceeding Supplemental to Execution, which "added Garnishee Defendant, [Ben's Quarry]. The purpose of the amendment was that Ingram Quarry was no longer a viable business and [Diamond] had knowledge that Ingram Quarry was being sold to Ben's Quarry." *Id.* at 193. In January 2012, the Marion Superior Court granted a motion to compel Ben's Quarry to fully respond to Interrogatory No. 10.

On April 5, 2012, Diamond filed a complaint for fraudulent transfer in the Marion County Lawsuit against various defendants,[1] including "Garnishee Defendants, [Ingram and Ben's Quarry]," which sought assets fraudulently transferred to Ingram and Ben's Quarry "while Diamond's motion for summary judgment was fully-briefed and pending the Court's entry of summary judgment." *Id.* at 29-30. On August 19, 2013, Diamond filed its first amended complaint against Ingram and Ben's Quarry, alleging violations of the Indiana Uniform Fraudulent Transfer Act and which sought to hold Ben's Quarry liable for Diamond's judgment against Ingram Quarry "under the '*de facto* merger' and 'mere continuation' doctrines of successor corporation liability." *Id.* at 89.

On February 24 and 25, 2014, the court held a bench trial. At the conclusion of the trial, the court stated that "quite honestly, I have followed the evidence very closely, I think I understand the issues" and that "these kind of cases" are "not easy because the issues are obviously complicated, but you guys were very well[-]prepared." Appellants' Appendix Volume VI at 66-67. On May 11, 2015, the court issued Findings of Fact, Conclusions of Law, and Judgment for Garnishee Defendants, in which it found in favor of Ingram and Ben's Quarry on all counts. The court found that there was "no basis to deem this sale to be a fraudulent conveyance of assets" and that the effort by Diamond to "position this case into the narrow *de facto* merger doctrine must fail." Appellants'

---

[1] The court's May 11, 2015 judgment indicates the court entered default judgment by November 1, 2012, against the named defendants other than Ingram and Ben's Quarry. *See* Appellants' Appendix Volume VIII at 193 n.1.

Appendix Volume VIII at 208, 213.  The court also found in part that Ingram Quarry entered into a purchase agreement "to sell some (but not all) of its assets to [Ingram] or his assignee for a purchase price of $1,246,000" and under the same contract, Ingram Quarry sold stone inventory to Ingram or his assignee for a purchase price of $104,000.  It found that Ingram and Ben's Quarry "applied with German American Bank for loans to finance the purchase of equipment and stone from Ingram Quarry"; that a closing took place at the offices of Title Plus! in Bloomington, Indiana, on February 25, 2011, in which Ingram Quarry was represented by its lawyer, Michael Carmin; that Carmin did not represent Ingram or Ben's Quarry in the transaction; and that, according to Carmin, Ingram Quarry became defunct some time in the Summer of 2011.  *Id.* at 198.  The order further states:

> This Court concludes that the only "badge of fraud" present in this case is Item No. 1 on the above-quoted list: "the transfer of property by a debtor during the pendency of a suit."  It is true that this transaction occurred while the lawsuit was pending, and that [Ingram] knew about the lawsuit. . . .  Specifically, the transaction was executed in January 2011 and closed in February 2011, just after cross-motions for summary judgment by both Diamond and by Ingram Quarry had been fully briefed.  The cross-motions would remain under advisement for another seven months before the prior court issued its summary judgment order in September 2011. . . .  However, the transaction between Ingram Quarry and Ben's Quarry *specifically excluded* the assets at issue in the lawsuit.  In other words, Ben's Quarry did not buy from Ingram Quarry any of the assets that were the subject of Diamond's claim against Ingram Quarry.

*Id.* at 206.

[8] On October 30, 2015, Ingram and Ben's Quarry filed a complaint with the Vanderburgh Superior Court in cause number 82D05-1510-CT-5582 (the "Vanderburgh County Lawsuit"), the cause from which this appeal arises, which alleged that Diamond "acted with malice in instituting and prosecuting" the Marion County Lawsuit against Ingram, "had no probable cause to institute and/or maintain" the Marion County Lawsuit against Ingram and Ben's Quarry, and "failed to make a reasonable or suitable inquiry and lacked any probable cause" to hold Ingram and Ben's Quarry personally liable. Appellants' Appendix Volume II at 42. On June 16, 2017, Diamond filed a motion for summary judgment, and Ingram and Ben's Quarry filed a motion for partial summary judgment.

[9] On September 8, 2017, the trial court held a hearing on the summary judgment motions in the Vanderburgh County Lawsuit and, on December 5, 2017, granted Diamond's summary judgment motion, finding as a matter of law that Ingram and Ben's Quarry could not prove their malicious prosecution claim because Diamond "had probable cause in initiating the underlying lawsuit against [them]" and it did not act maliciously.[2] *Id.* at 32. The order states in part that the Marion Superior court's conclusion in finding a badge of fraud "exceeds the threshold for probable cause and therefore [Ingram and Ben's Quarry] cannot prove that Diamond lacked probable cause" and that several

---

[2] The court additionally denied Ben's Quarry and Ingram's motion for partial summary judgment with regard to Diamond's affirmative defense of the advice of counsel and found it moot with regard to Diamond's other affirmative defenses.

connections between Ingram and Ben's Quarry and the original debtor, Ingram Enterprises, and the judgment debtor, Ingram Quarry, established probable cause. *Id.* at 23. With regard to the malice element of the malicious prosecution claim, the order states:

> Diamond and its attorneys made a reasonable inquiry by thoroughly investigating and discovering the facts above before filing the underlying lawsuit. . . . On October 17, 2011 Diamond served interrogatories on Ben's Quarry. Diamond had already filed for a proceeding supplemental against Ingram Quarry and a hearing was scheduled for November 29, 2011. Diamond had to file two motions to compel against [Ingram and Ben's Quarry] in order to obtain information regarding the asset sale. When Diamond received the information, Diamond discovered that the sale between [Ingram and Ben's Quarry] and Ingram Quarry had occurred just three days before the hearing on Diamond's Motion for Summary Judgment against Ingram Quarry. Diamond and its counsel made a reasonable inquiry into the facts before filing suit against [Ingram and Ben's Quarry] on April 5, 2012. Diamond chose to pursue the underlying action not out of animosity but out of an honest belief that [Ingram and Ben's Quarry] had acted fraudulently in the transfer of Ingram Quarry's assets.
>
> 37. Diamond voluntarily dismissed one of its counts against [Ingram and Ben's Quarry] prior to trial because Diamond did not believe it could prove the claim at trial. Chronological Case Summary attached to [Diamond's] Response in Opposition to [the Motion for Partial Summary Judgment by Ingram and Ben's Quarry] as Exhibit C, p. 10. This further displays that Diamond acted in good faith in the underlying lawsuit against [Ingram and Ben's Quarry].
>
> 38. There was no evidence [sic] personal animosity between Diamond and [Ingram and Ben's Quarry]. There is nothing in the

> record that indicates that Diamond or its representatives had any
> sort of ill feeling or bad history toward [Ingram and Ben's Quarry].

*Id.* at 30-31.

## *Discussion*

[10] The issue is whether the trial court erred in entering summary judgment in favor of Diamond and against Ingram and Ben's Quarry. The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Sheehan Const. Co., Inc. v. Continental Cas. Co.*, 938 N.E.2d 685, 689 (Ind. 2010) (citing *Bushong v. Williamson*, 790 N.E.2d 467, 474 (Ind. 2003)), *reh'g denied*. Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Id.* (citing *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992)). If the opposing party fails to meet its responsive burden, the court shall render summary judgment. *Id.* (citing *Bushong*, 790 N.E.2d at 474). We construe all factual inferences in the nonmoving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). "The fact that the parties have filed cross-motions for summary judgment does not alter our standard for review." *Asklar v. Gilb*, 9 N.E.3d 165, 167 (Ind. 2014) (citing *Reed*, 980 N.E.2d at 289). Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a

matter of law. *Id.* A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Webb v. City of Carmel*, 101 N.E.3d 850, 861 (Ind. Ct. App. 2018) (citing *Henderson v. Reid Hosp. & Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied*). We will affirm upon any theory or basis supported by the designated materials. *Id.*

[11] Ingram and Ben's Quarry argue that the findings of probable cause and lack of malice as a matter of law are fact-sensitive inquiries and inappropriate for resolution on summary judgment. They also argue that, in finding Diamond had probable cause to initiate the Marion County Lawsuit, the trial court improperly decided issues of fact that had already been determined and contend that collateral estoppel applies. Diamond responds that it needs only to affirmatively negate one of the elements of the malicious prosecution claim and contends the undisputed evidence both establishes it had probable cause to initiate its lawsuit and affirmatively negates the malice element of malicious prosecution.

[12] The essence of malicious prosecution rests on the notion that the plaintiff has been improperly subjected to legal process. *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001) (citing *Ziobron v. Crawford*, 667 N.E.2d 202, 208 (Ind. Ct. App. 1996), *trans. denied*). There are four elements of a malicious prosecution claim: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted with malice in doing so; (3)

the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor. *Id.* (citing *Trotter v. Ind. Waste Sys.*, 632 N.E.2d 1159, 1164 (Ind. Ct. App. 1994).

[13] We note initially that collateral estoppel is applicable "when a particular issue is adjudicated and then is put into issue in a subsequent suit on a different cause of action between the same parties or those in privity with them." *Ind. Gas Co., Inc. v. Ind. Util. Regulatory Comm'n*, 75 N.E.3d 568, 580 (Ind. Ct. App. 2017) (citing *Watson Rural Water Co., Inc. v. Ind. Cities Water Corp.*, 540 N.E.2d 131, 135 (Ind. Ct. App. 1989), *trans. denied*, *reh'g denied*). We have previously held, however, that "[c]ollateral estoppel does not extend to matters that were not expressly adjudicated or to matters that can be inferred from the prior adjudication only by argument." *Id.* (quoting *MicroVote Gen. Corp. v. Ind. Election Comm'n*, 924 N.E.2d 184, 197 (Ind. Ct. App. 2010)). At the time of the Marion County Lawsuit, Ind. Code § 32-18-2-14, which governs fraudulent transfer, provided:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

(Subsequently amended by Pub. L. No. 61-2017 § 13, eff. July 1, 2017). We also note the Indiana Supreme Court's statement in *Cooper Industries, LLC v. City of South Bend* that:

> Courts sometimes treat asset transfers as *de facto* mergers where the economic effect of the transaction makes it a merger in all but name. Some pertinent findings might include continuity of the predecessor corporation's business enterprise as to management, location, and business lines; prompt liquidation of the seller corporation; and assumption of the debts of the seller necessary to the ongoing operation of the business.

899 N.E.2d 1274, 1288 (Ind. 2009). Contrary to the argument by Ingram and Ben's Quarry, the court's findings in the Marion County Lawsuit – that there was "no basis to deem this sale to be a fraudulent conveyance of assets" and that the effort by Diamond to "position this case into the narrow *de facto* merger doctrine must fail" – do not equate to an adjudication that Diamond acted with malice in instituting or causing to be instituted an action against Ingram and Ben's Quarry or had no probable cause to institute the action. Appellants' Appendix Volume VIII at 208, 213. The elements required to be shown to obtain a judgment of fraudulent transfer under Ind. Code § 32-18-2-14 or of

liability under the *de facto* merger doctrine are not identical to the elements to be shown to prove a malicious prosecution claim.

[14] To the extent that Ingram and Ben's Quarry argue that Diamond had no probable cause to institute an action against them, we note that probable cause exists "when a reasonably intelligent and prudent person would be induced to act as did the person who is charged with the burden of having probable cause." *City of New Haven*, 748 N.E.2d 374 at 379 (quoting *Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 409 (Ind. Ct. App. 1995), *trans. denied*). More simply stated, the inquiry is whether the defendant acted reasonably in believing the plaintiff was somehow responsible for the tortious actions. *See Satz v. Koplow*, 397 N.E.2d 1082, 1085 (Ind. Ct. App. 1979).

[15] We observe that the court in the Marion County Lawsuit found the "transfer of property by a debtor during the pendency of a suit" present and concluded that "this transaction occurred while the lawsuit was pending" and "was executed in January 2011 and closed in February 2011, just after cross-motions for summary judgment by both Diamond and by Ingram Quarry had been fully briefed." Appellants' Appendix Volume VIII at 206. On October 12, 2011, when Diamond filed an Amended Verified Motion for Proceeding Supplemental to Execution which added Ben's Quarry as a Garnishee Defendant, it had "knowledge that Ingram Quarry was being sold to Ben's Quarry." *Id.* at 193. We further note that the fact that a party is ultimately proven wrong in his interpretation of the law, does not lead to the conclusion the party had no probable cause to file suit. *Willsey v. Peoples Fed. Sav. and Loan*

*Ass'n of E. Chicago*, 529 N.E.2d 1199, 1206 (Ind. Ct. App. 1988), *trans. denied*. "To hold otherwise, would have a chilling effect on all litigation." *Id.* (citing *Wong v. Tabor*, 422 N.E.2d 1279, 1285 (Ind. Ct. App. 1981)). The designated evidence supports the trial court's determination that Diamond had probable cause to believe a fraudulent transfer had occurred between Ingram Quarry and Ingram and Ben's Quarry.

[16]  Further, the designated materials that Diamond submitted in support of its motion for summary judgment are dispositive of the malice element of the tort. "Malice 'in fact' must be shown here; malice 'in law' such as is required in defamation actions is not sufficient." *Satz*, 397 N.E.2d at 1085 (quoting PROSSER TORTS (4th ed. 1971)). Malice may be inferred from a total lack of probable cause necessary to bring suit. *Kroger Food Stores, Inc. v. Clark*, 598 N.E.2d 1084, 1087 (Ind. Ct. App. 1992), *trans. denied*. Personal hatred or a desire for revenge is not necessary to establish malice, though neither is such evidence precluded from consideration. *Satz*, 397 N.E.2d at 1085. The failure of the defendant in the original suit giving rise to the action for malicious prosecution to make a suitable and reasonable inquiry into the facts underlying the original action is not enough in itself to sustain an action for malicious prosecution. *Mirka v. Fairfield of Am., Inc.*, 627 N.E.2d 449, 451-452 (Ind. Ct.

App. 1994), *trans. denied*. Rather, that failure must be culpable, that is, malice that rises above the level of mere negligence.[3] *Id.*

[17] Along with its June 16, 2017 motion for summary judgment, Diamond designated the deposition of Michael Cork, an attorney from the law firm of Bamberger, Foreman, Oswald & Hahn, LLP ("Bamberger") who filed Diamond's September 29, 2009 complaint against Ingram Quarry to recover the unpaid balance from the 2005 sale in the Marion County Lawsuit, which later led to Diamond obtaining a monetary judgment of $907,889.81 in its favor. Cork's deposition indicated that following the grant of judgment against Ingram Quarry "one of the first things we did was attempt to contact Ingram Quarry," that it was not until "that point when we started to look for Ingram Quarry that we discovered that Ben's Quarry existed," and that "[w]e called the phone number where [Ingram Quarry] had existed and it was answered Ben's

---

[3] To the extent Ingram and Ben's Quarry cite *Brown v. Indianapolis Housing Agency*, 971 N.E.2d 181, 186 (Ind. Ct. App. 2012), for the proposition that a failure to make a reasonable or suitable inquiry can be used to infer malice, we find instructive this Court's observation in *Mirka*:

> At least one other case, *F.W. Woolworth Co., Inc. v. Anderson* (1984), Ind.App., 471 N.E.2d 1249, 1254, *trans. denied*, has noted that malice may be inferred from the failure to conduct a reasonable or suitable investigation. To the extent that *F.W. Woolworth* implies that no culpability (malice in this context) is required before a failure to reasonably investigate can be considered evidence of malice, we disagree. A mere failure to make a reasonable investigation smacks of negligence. The use of the word "reasonable" betrays this. To allow negligence to serve as evidence of malice in a cause of action for malicious prosecution is to, as a practical matter, create a cause of action for negligent prosecution. That would allow through the back door that which we have refused to allow through the front door. Any allegation that a defendant has failed to reasonably investigate, therefore, before it can be considered to be evidence of malice, must be linked to evidence that the failure was done with the required level of culpability-here malice. Standing alone a mere failure of this sort cannot allege the necessary intent.

627 N.E.2d at 451 n.5.

Quarry." Appellants' Appendix Volume VI at 203-204. Cork stated in his deposition that "we checked to see when Ben's Quarry was formed and obtained that information through the Secretary of State" in response to a question about whether certain information was provided by Diamond or by his primary contact with Diamond, Dan Hengen. *Id.* at 205. Cork further stated that "[w]hen we found out about [Ingram], it was because I did not know [Ingram] previously" and that Hengen "said [Ingram] is a relative of the Ingrams who were involved with Ingram Enterprises, and [Ingram] is somebody that we dealt with when Diamond picked up certain scrap equipment for salvage value and [Ingram] worked as a manager at Ingram Quarry." *Id.*

[18] Diamond also designated an affidavit by Hengen indicating that he was Diamond's chief financial officer and that, before filing suit against Ingram and Ben's Quarry, Bamberger "discovered that Ingram Quarry had sold almost all of its assets to Ben's Quarry while summary judgment motions were pending in [Diamond's] lawsuit against Ingram Quarry." Appellants' Appendix Volume II at 80. The affidavit also states in part:

> 11. Although having never spoken to [Ingram] prior to filing the underlying lawsuit, the undersigned had familiarity with [Ingram] being involved with Ingram Quarry.
>
> 12. In communicating with [Cork] about [Ingram], discussions included knowing [Ingram] had worked at Ingram Quarry, that he was related to the original owners of Ingram Enterprises, and that [Diamond] dealt with [Ingram] when [Diamond] picked up the equipment that Ingram Quarry had defaulted on.

13. Through discussions with my legal counsel, it was decided that attorney [Cork] ought to continue to investigate Ben's Quarry and [Ingram's] connection to Ingram Quarry.

14. [Cork] learned through depositions and other discovery efforts and informed me of the following:

> a. Ingram Quarry's name remained on the fax machine legend at Ben's Quarry for nearly two years after the asset sale;
>
> b. Ingram Quarry's name remained on the Indiana Department of Environmental Management permits for two years after the asset sale;
>
> c. The asset sale took place three days before the hearing on the motions for summary judgment in the Diamond Equipment v. Ingram Quarry case.
>
> d. The asset sale took place very quickly and involved multiple loans being signed at once.
>
> e. [Ingram] was not represented by counsel during the transaction.
>
> f. Ben's Quarry was located at the same address where Ingram Quarry had been located.
>
> g. Ben's Quarry used the same telephone number and fax number that Ingram Quarry had used.
>
> h. When [Cork], or other [Bamberger] members called Ingram Quarry's former telephone number, it was answered "Ben's Quarry." [Bamberger] asked about Ingram Quarry's status and the Ben's Quarry employees stated they did not know what happened to Ingram Quarry.

15. Attorney [Cork] called me with the results of the call to Ingram Quarry, now Ben's Quarry and recommended that Cork

contact [Carmin], attorney for Ingram and indicate the need to take [Ingram's] deposition or the deposition of a Ben's Quarry representative. . . . I was aware and approved of these steps in conversation with my attorneys and before filing suit. A copy of my attorney's correspondence to Attorney [Carmin] was attached to the Complaint as an Exhibit. I recall that [Cork] told me Carmin did not respond. The day before [Bamberger] filed suit on [Diamond's] behalf against [Ingram] and Ben's Quarry, Carmin sent an email offering documents only, provided [Diamond] agreed they were all confidential and proprietary. Cork emailed me this information and forwarded the Carmin email. In conversation with [Cork], we decided it was more stalling, and decided to file suit.

16. Based on attorney [Cork's] report and in my opinion, there were simply too many coincidences surrounding the asset sale.

*Id.* at 81-82. We further note the Marion Superior court found that, on October 12, 2011, Diamond filed an Amended Verified Motion for Proceeding Supplemental to Execution which added "Garnishee Defendant, [Ben's Quarry]." Appellants' Appendix Volume VIII at 193. The record includes a copy of the chronological case summary in the Marion County Lawsuit that contains a November 17, 2011 entry which states "Interrogatories: Ben's Quarry." Appellants' Appendix Volume IX at 33. Ingram's deposition includes an "Exhibit D 12/5/11 Letter from Mr. Cork" addressing Hengen, indicating that Ingram Quarry, Ben's Quarry, and Carmin did not appear at a November 29, 2011 Proceedings Supplemental hearing and stating in part "Additional discovery is needed to find out where the money went and how the distribution of that money and equipment impacts a fraudulent transfer claim." Appellants' Appendix Volume VI at 74, 182. The record also contains copies of

the Marion Superior court's January 3, 2012 Order Granting Motion to Compel Ben's Quarry, LLC to Fully Respond to Interrogatory No. 10[4] and October 16, 2012 "Order Granting Motion to Compel Garnishee Defendants – Benjamin P. Ingram and Ben's Quarry, LLC – To Produce Documents."  Appellants' Appendix Volume IX at 27-28.

[19] Even construed in a light most favorable to Ingram and Ben's Quarry as the nonmovants, this evidence satisfied Diamond's burden of proving the absence of a question of material fact as to any intended malicious prosecution of Ingram and Ben's Quarry.  Further, when considering all the designated evidence together and in a light most favorable to Ingram and Ben's Quarry, we cannot conclude that they then provided materials which demonstrated the existence of a genuine issue of material fact.

[20] For the foregoing reasons, we affirm the trial court's grant of Diamond's motion for summary judgment.

[21] Affirmed.

Najam, J., and Tavitas, J., concur.

---

[4] We note Diamond's October 6, 2011 proceedings supplemental interrogatories included an "Interrogatory No. 10" which inquired into "any liens or security interests against any of the foregoing inventory, accounts, equipment or assets."  Appellants' Appendix Volume VIII at 22.