

IN THE

# Court of Appeals of Indiana

Midwest Holdings-Indianapolis, LLC,

*Appellant-Cross-Appellee-Defendant*



FILED

Feb 21 2025, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

David R. Hennessy and Vickie Yaser,

*Appellees-Cross-Appellants-Plaintiffs*

---

February 21, 2025

Court of Appeals Case No.
24A-PL-125

Appeal from the Marion Superior Court

The Honorable John M.T. Chavis, II, Judge

Trial Court Cause No.
49D05-1801-PL-3746

---

**Opinion by Judge May**
Judges Brown and Weissmann concur.

**May, Judge.**

Midwest Holdings-Indianapolis, LLC, ("Midwest Holdings") appeals following the trial court's order granting summary judgment in favor of David R. Hennessy and Vickie Yaser (collectively, "Prospective Buyers") on the claims Midwest Holdings brought against them. Prospective Buyers cross-appeal and argue the trial court erred by granting summary judgment in favor of Midwest Holdings on Prospective Buyers' breach of contract claim against Midwest Holdings and by denying Prospective Buyers' motion to amend their complaint. The parties raise several issues for our review, which we revise and restate as:

1. Whether the trial court erred by:

    1.1. granting summary judgment in favor of Prospective Buyers on Midwest Holdings' claims for malicious prosecution, abuse of process, and recovery of attorney fees; and

    1.2. granting summary judgment in favor of Midwest Holdings on Prospective Buyers' claim for breach of contract.

2. Whether the trial court abused its discretion by denying Prospective Buyers' motion to amend their complaint.

We affirm.

## Facts and Procedural History

In 2018, Midwest Holdings, which is a company solely owned by Katherine Bleier, listed real property on River Road in Indianapolis ("Property") for sale. The listing identified Katherine Bleier's husband James Bleier ("Bleier") as the

real estate broker for the seller. On January 6, 2018, Prospective Buyers, through their real estate agent Sari Mandresh, offered to purchase Property for the list price of $80,000 and sent a proposed purchase agreement to Bleier.[1] He signed and returned the purchase agreement with the seller's response portion marked: "The above offer is Countered. See Counter Offer." (Appellant's App. Vol. 2 at 64.) However, a counteroffer did not accompany the returned purchase agreement.

[3] Bleier then sent Dan Bostick of Monument Title Insurance Company, Joe Fall,[2] and Mandresh an email that stated:

> Dan,
>
> See executed purchase agreement for 7636 River Rd. Please advise on survey and closing date. Buyer requested fast close!
>
> Jim Bleier

(Appellant's App. Vol. 3 at 74.) Mandresh and Bleier exchanged text messages regarding the Prospective Buyers' delivery of earnest money and discussing amendments to the purchase agreement. Mandresh prepared an amendment to the purchase agreement specifying the timeframe for closing, substituting

---

[1] Mandresh averred that Bleier called her after submitting the offer and told her the seller had accepted the offer. However, Bleier averred he never told Mandresh that Midwest Holdings had accepted the Prospective Buyers' offer.

[2] Joe Fall is a "business associate" of Bleier. (Appellant's Br. at 12.)

Paramount Title Company to perform the title work, and waiving the order for homeowner's insurance. Bleier signed and returned the amendment. He also changed the status of the listing for Property to "Pending." (*Id*. at 59.)

[4] On January 8, 2018, Mandresh noticed the status of the property listing for Property was changed from "Pending" to "Withdrawn." (*Id*. at 60.) Mandresh texted Bleier asking about the status change, and Bleier responded: "Not sure what happened I will fix it." (*Id*.) Bleier then called Mandresh and asked her to prepare a second amendment to the purchase agreement changing the name of the company designated to perform the title work. Mandresh prepared the second amendment and sent it to Bleier, but he never returned a signed copy.

[5] On January 9, 2018, Bleier called Mandresh. Mandresh described the phone call as follows:

> The substance of my conversation with Mr. Bleier is that he stated that he had another buyer, his friend Joe, who was interested in purchasing the Property from Mr. Hennessy and Ms. Yaser. Mr. Bleier stated that he was willing to pay me a commission "under the table" (those were his words). I immediately refused to discuss any such commission because it would be highly unethical. Mr. Bleier asked if Mr. Hennessy and Mr. Yaser were interested in selling the Property. I asked him what his interested buyer was willing to pay for the Property. I told him I would convey any offer to Mr. Hennessy and Ms. Yaser. Mr. Bleier responded that the interested Buyer was willing to pay $85,000. I passed that offer on to Mr. Hennessy and Ms. Yaser. They were not interested in considering such an offer.

(*Id*. at 60-61.) Bleier, on the other hand, averred:

> When I learned that Joe Fall would be willing to offer $150,000 for the Property, I called Mandresh on the evening of January 9, 2018 and asked her if Plaintiffs wanted to increase their offer. Mandresh answered no, stating that Plaintiffs did not want a bidding war. At no point during that conversation did I propose or suggest that Plaintiffs should "re-sell" the Property to Joe Fall for $85,000.

(*Id*. at 9.)

[6] On January 10, 2018, Mandresh discovered Bleier had signed and returned the purchase agreement on January 6, 2018, with the seller's response portion marked countered rather than accepted. Mandresh printed a copy of the seller's response, modified the seller's response on the photocopy to indicate an accepted offer, and initialed the change. She then appended the photocopy to the end of the unchanged eight-page purchase agreement and one-page addendum and emailed the document to Bleier. The following email exchange ensued:

**Sari Mandresh** <sari.mandresh@talktotucker.com>          Jan 10 (1 day
                                                                  ago)

to Jim

Hi Jim,

My office noticed that you signed the PA as countered. Could you please correct this and re-sign?
I also need the signed amendments.
Thx,
Sari


**Jim Bleier**                                        10:11 PM (19 hours
                                                                  ago)

to me

Sari,

As reflected on the Purchase Agreement, attached is the counteroffer for your clients execution so we may
proceed forward.



Sincerely,

Jim Bleier
310-502-5885

**Sari Mandresh** <sari.mandresh@talktotucker.com>     10:22 PM (19 hours
                                                                  ago)

to Jim

You accepted the original agreement.



**Jim Bleier**                                          3:37 PM (1 hour
                                                                  ago)

to me

Sari,

As you confirmed in your email to me yesterday, the offer was not accepted, which is why you asked me to modify the agreement.

I submitted the counter offer for your buyers, which has now expired. We are out of contract at this time.

Jim

Sincerely,

Jim Bleier
310-502-5885

**Sari Mandresh <sari.mandresh@talktotucker.com>**          4:14 PM (1 hour ago)

to Jim

On Thu, Jan 11, 2018 at 4:01 PM Sari Mandresh <sari.mandresh@talktotucker.com> wrote:
The checked box is a clerical error. I have a counter that is past the response time. A countered offer should be accompanied by the counter which it was not. You sent emails to me and the title company indicating an accepted offer.
You have sent me an email and text on where to send the earnest money.

Further you did not disclose that you have interest in the property and did not have us a sign a mutual release.

**Jim Bleier**          4:57 PM (39 minutes ago)

to me

Sari,

The seller nor I are alleging any error by checking the counter box. Which clerk are you referring?

You allege you have not received a counter; however I emailed the counter yesterday giving your client ample time to respond. I'm not aware of any emails or texts that would override the purchase documents presented.

I have no personal interest in the property and a disclosure is irrelevant.

Last, a mutual release is only required if the Buyer/Seller were under contract, which we are clearly not now that the time allowed for the Buyer's response has lapsed. Jim

(*Id*. at 79-80.) On January 11, 2018, Midwest Holdings and National Asset Consultants LLC ("NAC") entered a purchase agreement whereby NAC agreed to purchase Property for $150,000. NAC is a limited liability company owned by Fall's wife, Karlin Fall, and managed by Fall.

[7] After Prospective Buyers' attempt to purchase Property fell through, Hennessy and Mandresh exchanged several text messages regarding Bleier. In those messages, Hennessy stated: "I will haunt this guy;" "Make no mistake James Bleier is my target;" "I guarantee you he will regret what he did;" "Lost many properties. Don't care about that. But when you make a deal and decide whoa I have a better deal you can be up front or do what he Did.;" "Fuvk that guy;" "I'm going to punish him." (Appellant's App. Vol. 3 at 124 & 131-32) (errors in original). Hennessy also exchanged several emails with Bleier threatening litigation and seeking to settle the matter in anticipation of litigation. In those emails, Hennessy wrote: "No one has ever screwed me without regretting it sooner or later" and "It's not the property as you suppose it's the screwing your [sic] trying to give me." (*Id*. at 117 & 118.)

[8] On January 29, 2018, Prospective Buyers filed a complaint in the Marion Superior Court against Midwest Holdings alleging breach of contract and seeking specific performance. Prospective Buyers also filed a lis pendens[3]

---

[3] "The doctrine of 'lis pendens' provides a mechanism by which a person may notify third parties that he may have or acquire an interest in real property as a result of a pending legal dispute." 22 Ind. Prac., Civil Trial Practice § 29.24 (2d ed.).

notice with the Marion County Clerk. On May 25, 2018, NAC filed suit in the United States District Court for the Southern District of Indiana against both Midwest Holdings and Prospective Buyers. *National Asset Consultants LLC v. Midwest Holdings—Indianapolis, LLC, F.C. Tucker Company, Inc., Sari Mandresh, David Hennessy and Vickie Yaser*, Case No. 1:18-cv-01616-JRS-DML. NAC alleged Midwest Holdings contracted to sell Property to it for $150,000 but breached the contract by failing to pass clean title to Property. NAC also alleged Prospective Buyers violated the Indiana Crime Victims Relief Act[4] by using forged documents to slander NAC's title to the Property.

[9] On June 22, 2018, Midwest Holdings answered the Prospective Buyers' complaint in the lawsuit pending in Marion Superior Court. Midwest Holdings also asserted two counterclaims against Prospective Buyers alleging abuse of process and malicious prosecution. Further, it characterized Prospective Buyers' lawsuit as frivolous and sought attorney fees.

[10] On July 30, 2018, Prospective Buyers filed a crossclaim in the federal action alleging Midwest Holdings "entered into an enforceable agreement for the sale and purchase of the Subject Property," and Midwest Holdings "materially breached the Purchase Agreement and the amendments thereto by refusing to finalize the sale of the Subject Property and, thereafter, allegedly conveying the Subject Property to NAC." (Appellant's App. Vol. 2 at 168-69.) Midwest

---

[4] Ind. Code § 34-24-3-1.

Holdings then filed a crossclaim against Prospective Buyers in the federal action on October 29, 2018, asserting Prospective Buyers slandered Midwest Holding's title to Property and interfered with its sale of Property to NAC. Midwest Holdings and Prospective Buyers filed cross-motions for summary judgment on their crossclaims against each other, and NAC filed a motion for summary judgment against Prospective Buyers.

[11] On March 30, 2021, United States District Judge James Sweeney issued an order on the pending summary judgment motions in the federal action. He granted summary judgment in favor of Prospective Buyers on the claims brought against it by NAC and Midwest Holdings pursuant to the Indiana Crime Victims Relief Act. Judge Sweeney explained that while the filing of the lis pendens notice likely damaged Property's value, there was no evidence that either NAC or Midwest Holdings sustained damages because Mandresh modified the purchase agreement. The district court also ruled that no contract existed between Prospective Buyers and Midwest Holdings because the purchase agreement expressly stated the offer had to be accepted in writing and Midwest Holdings never provided a written acceptance of the offer. Therefore, the court granted Midwest Holdings' motion for summary judgment on Prospective Buyers' breach of contract claim. The district court also granted summary judgment in favor of Prospective Buyers on the slander of title claims brought by both Midwest Holdings and NAC "because statements made in relation to a properly-filed lis pendens notice are absolutely privileged." (*Id*. at 115.) In addition, the district court granted summary judgment in favor of

Prospective Buyers on Midwest Holdings' tortious interference claim "because the record does not suggest Hennessy and Yaser had any knowledge of the contract between Midwest and NAC when the suit for specific performance was filed." (*Id.* at 116.) Midwest Holdings and NAC appealed the district court's order, and the Seventh Circuit Court of Appeals affirmed the district court. Prospective Buyers did not appeal the district court's order.

[12] In the state court action, on October 24, 2022, Prospective Buyers filed a motion seeking summary judgment on the counterclaims brought against it by Midwest Holdings. Prospective Buyers argued Midwest Holdings' claims failed as a matter of law because "there existed significant substantial evidence to support Hennessy and Yaser's belief that all involved in the transaction believed that an enforceable contract for the transfer of the Property had been formed." (*Id.* at 78.)

[13] Prospective Buyers also filed a motion seeking leave to amend their complaint to add a claim alleging promissory estoppel against Midwest Holdings. The Prospective Buyers asserted they should be allowed to amend their complaint because "[o]n September 12, 2022, the Court ordered the release of the lis pendens so specific performance is no longer a viable remedy" and they learned sufficient facts through litigation of the federal action to plead promissory estoppel. (Appellees' App. Vol. 2 at 2.) Midwest Holdings filed a response in opposition to Prospective Buyers' motion to amend. It argued Prospective Buyers knew "for quite some time that they were not entitled to specific performance" and "left their Complaint to stagnate, knowing that the remedy

sought was unavailable." (*Id.* at 10.) Midwest Holdings also asserted it was prejudiced by Prospective Buyers' four-year delay in bringing the proposed amended complaint and "the factual underpinnings of Midwest's purported promise . . . were all well known to [Prospective Buyers] before the original Complaint was filed." (*Id.* at 11-12.)

[14] On November 23, 2022, Midwest Holdings filed its response to Prospective Buyers' motion for summary judgment. It argued genuine disputes of material fact existed regarding Prospective Buyers' motivations and use of the legal process to preclude summary judgment on its malicious prosecution and abuse of process claims. On December 30, 2022, Midwest Holdings filed a cross-motion for partial summary judgment in its favor on Prospective Buyers' breach of contract claim. Midwest Holdings argued the claim was barred by res judicata, and alternatively, Midwest Holdings was entitled to judgment as a matter of law because no contract existed between Midwest Holdings and Prospective Buyers. In response, Prospective Buyers argued Midwest Holdings was not entitled to summary judgment because its breach of contract claim was not barred by the federal action and "[t]here is a genuine issue of material fact whether Bleier is being untruthful when averring that he checked the countered box intentionally." (Appellant's Supp. App. Vol. 3 at 24.)

[15] The trial court granted Prospective Buyers permission to file a supplemental designation of evidence when Prospective Buyers reported additional information came to light relevant to the summary judgment motions. On May 22, 2023, Prospective Buyers submitted a supplemental designation of evidence

that included an affidavit from Fall.[5] In that affidavit, Fall asserted Bleier told Fall checking the counter box "was a mistake" that Bleier saw "as a chance to get out of the deal" and "[t]he transfer from Midwest to NAC was a sham and no money was exchanged or obligations incurred." (Appellant's App. Vol. 3 at 174.) Fall also averred that after Prospective Buyers filed the instant action in state court, Bleier instructed Fall to falsely state that he lived in Kentucky so that NAC could file suit in federal court.

[16] The trial court held a hearing on the cross-motions for summary judgment, and on December 18, 2023, the trial court issued its order on the Prospective Buyers' motion for leave to amend their complaint and the cross-motions for summary judgment. The trial court ruled:

> 1. [Prospective Buyers'] Motion for Leave to Amend Complaint is **DENIED**. The factual underpinnings of a promissory estoppel claim were known to [Prospective Buyers] when they filed their Complaint in 2018. [Prospective Buyers] alleged facts in their Complaint to support their demand for specific performance. [Prospective Buyers] also sought an alternative remedy for just and fair compensation for damages proven at trial if specific performance was not available to them. However, the Complaint is devoid of facts that support a claim for promissory estoppel. [Prospective Buyers] also would have been aware of the need to amend their complaint when it learned that Midwest Holdings sold the subject property to a third-party. To allow an amendment to the pleadings after the passage of nearly six years

---

[5] Midwest Holdings filed a motion to strike Prospective Buyers' supplemental designation of evidence, but the trial court denied the motion to strike.

would cause undue delay and be prejudicial to Midwest Holdings.

* * * * *

4. The Court takes **JUDICIAL NOTICE** of the March 30, 2021 Order on Motions for Summary Judgment and Other Pending Motions issued by the Honorable Judge James R. Sweeney, II, in the matter of *National Asset Consultants LLC v. Midwest Holdings— Indianapolis, LLC, F.C. Tucker Company, Inc., Sari Mandresh, David Hennessy and Vickie Yaser*, U.S. District Court for the Southern District of Indiana—Indianapolis Division, Cause Number 1:18-cv-01616-JRS-DML, to the extent that those rulings establish res judicata of claims and issue[s] in the underlying case.

5. Midwest Holdings' Cross-Motion for Partial Summary Judgment on [Prospective Buyers'] claims for breach of contract is **GRANTED**. The [Prospective Buyers'] Complaint seeks specific performance of a purported contract for the sale of the Property, or, alternatively, damages resulting from the alleged breach of contract. Underlying all relief requested in the Complaint is the purported existence of a contract for Midwest holdings to sell the Property to [Prospective Buyers]. Because litigation between these same parties in federal . . . court has resolved the contract issue in favor of Midwest Holdings, issue preclusion and claim preclusion prevent [Prospective Buyers] from relitigating that issue here. The federal court concluded as follows:

> But, simply put, none of this circumstantial evidence can overcome the plain language of the offer, which required the acceptance to be in writing before a certain time. No material facts are in dispute in this regard, and Midwest is entitled to judgment as a matter of law on Hennessy and Yaser's breach-of-contract crossclaim.

Thus, Midwest Holdings is entitled to judgment as a matter of law on any claim raised in the underlying complaint.

6. [Prospective Buyers'] Motion for Summary Judgment on Defendant, Midwest Holdings—Indianapolis, LLC ("Midwest Holdings")'s Counterclaims is **GRANTED**. The Court finds that Midwest Holdings' counterclaims fail as a matter of law as there existed evidence whether written or through the parties' conduct to support [Prospective Buyers'] belief that all involved in the transaction believed that an enforceable contract for the transfer of the Property had been formed. While the Federal Court found against [Prospective Buyers] on this issue, the material evidence does not show that proceeding with those claims was in bad faith.

7. As with the federal case, the outcome of the dispositive motions here result in no claims or counterclaims surviving for trial. Therefore, the matter under Cause Number 49D05-1801-PL-003746 is concluded.

(Appellant's App. Vol. 2 at 22-24) (record citations omitted).

# Discussion and Decision

## 1. Cross-Motions for Summary Judgment

[17] Both Midwest Holdings and Prospective Buyers challenge the trial court's order on the cross-motions for summary judgment. Midwest Holdings challenges the trial court's entry of summary judgment in favor of Prospective Buyers on its claims against Prospective Buyers, and Prospective Buyers challenge the trial court's entry of summary judgment in favor of Midwest Holdings on their claims against Midwest Holdings. "[T]hat the parties have filed cross-motions

for summary judgment neither alters our standard of review nor changes our analysis—we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Baldwin v. Standard Fire Ins. Co.*, 238 N.E.3d 655, 661 (Ind. Ct. App. 2024), *reh'g denied*.

We review a trial court's ruling on a motion for summary judgment de novo and apply the same standard as the trial court. *Allstate Ins. Co. v. Hatfield*, 28 N.E.3d 247, 249 (Ind. Ct. App. 2015). "Drawing all reasonable inferences in favor of the non-moving party, we will find summary judgment appropriate if the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* A fact is material if its resolution is necessary to determine the outcome of the case, and an issue is genuine if the trier of fact is required to resolve the parties' differing versions of the truth, or if the undisputed material facts support conflicting reasonable inferences. *Id.* "We note that a trial court's findings of fact and conclusions of law are helpful and offer insight into the rationale of the trial court's judgment, but they are not binding upon us. We will affirm on any theory or basis supported by the designated materials." *Hanna v. Ind. Farmers Mut. Ins. Co.*, 963 N.E.2d 72, 76 (Ind. Ct. App. 2012) (internal citation omitted), *trans. denied*.

## 1.1 Prospective Buyers' Motion for Summary Judgment

Midwest Holdings asserts the trial court erred in granting summary judgment in favor of Prospective Buyers on its malicious prosecution claim because genuine issues of material fact exist regarding whether Prospective Buyers acted with

malicious intent and lacked probable cause in bringing their breach of contract action. A malicious prosecution claim requires the plaintiff to prove four elements: "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 249-50 (Ind. Ct. App. 2013), *trans. denied*. "Malice may be inferred from a total lack of probable cause, the failure to make a reasonable or suitable inquiry, or a showing of personal animosity." *Brown v. Indianapolis Hous. Agency*, 971 N.E.2d 181, 186 (Ind. Ct. App. 2012). "Probable cause exists 'when a reasonably intelligent and prudent person would be induced to act as did the person who is charged with the burden of having probable cause." *Crosson v. Berry*, 829 N.E.2d 184, 197 (Ind. Ct. App. 2005) (quoting *City of New Haven v. Reichhart*, 748 N.E.2d 374, 379 (Ind. 2001)), *trans. denied*. Usually, the determination of probable cause is for the trier of fact to determine, but "when the facts are undisputed, probable cause is for the court to decide as a matter of law." *Id*.

[20] The parties do not dispute that Bleier marked countered on the purchase agreement but did not include a counteroffer with his response. He sent an email to the title company implying Midwest Holdings had accepted Prospective Buyers' offer, stating, "See executed purchase agreement for 7636 River Rd. Please advise on survey and closing date. Buyer requested fast close!" (Appellant's App. Vol. 3 at 74.) Bleier and Mandresh also exchanged

several texts regarding the delivery of earnest money, and Bleier texted Mandresh that he would "fix it" when she asked him about Property's listing status being changed from "pending" to "withdrawn." (*Id*. at 59.) In addition, Bleier requested Mandresh draft amendments to the purchase agreement. Even though the district court ruled against Prospective Buyers on their breach of contract crossclaim, the district court noted that for two days after Bleier returned the purchase agreement, Prospective Buyers, Mandresh, and Bleier "acted in a way consistent with them believing a contract for the sale of the Property had been formed." (Appellant's App. Vol. 2 at 85-86.) Therefore, based on Bleier's representations and actions, a reasonably intelligent and prudent person would believe that he or she had a deal with Midwest Holdings to purchase Property and Midwest Holdings broke that agreement by backing out of the deal, and knowing these facts, a reasonable person would be induced to initiate suit. Thus, Prospective Buyers' breach of contract action against Midwest Holdings was supported by probable cause, and we hold Prospective Buyers were entitled to judgment as a matter of law on Midwest Holdings' malicious prosecution claim.[6] *See*, *e.g.*, *Ingram v. Diamond Equip., Inc.*, 118 N.E.3d 1, 11 (Ind. Ct. App. 2018) (holding seller of heavy equipment was entitled to summary judgment in its favor on quarry owner's malicious

---

[6] For the same reasons we conclude probable cause existed for the Prospective Buyers to bring their breach of contract action, we affirm the trial court's decision not to award attorney fees to Midwest Holdings. *See*, *e.g.*, *Lockett v. Hoskins*, 960 N.E.2d 850, 854 (Ind. Ct. App. 2012) (holding defendant was not entitled to attorney fees because plaintiff's premises liability claim, while unsuccessful, was not unreasonable, frivolous, or groundless).

prosecution claim because seller had probable cause to believe fraudulent transfer occurred), *trans. denied*.

[21] With respect to Midwest Holdings' abuse of process claim, a plaintiff "claiming abuse of process must show a misuse or misapplication of process for an end other than that which it was designed to accomplish." *Waterfield v. Waterfield*, 61 N.E.3d 314, 328 (Ind. Ct. App. 2016), *trans. denied*. This requires the party to prove two elements: "(1) ulterior purpose or motives; and (2) a willful use of process not proper in the regular conduct of the proceedings." *Id*. The intent of the party accused of abusing the legal process is irrelevant if that party's actions were procedurally and substantively proper under the circumstances. *Id*. "There is no basis for an abuse of process claim if [the] legal process is used to accomplish an outcome that the process was designed to accomplish. The purpose for which the process is used is the only thing of importance." *Id*. (internal citation and quotation marks omitted).

[22] A breach of contract action may be founded upon an implied contract in the absence of an express or written agreement. *See Money Store Inv. Corp. v. Summers*, 909 N.E.2d 450, 459 (Ind. Ct. App. 2009) ("Where there is no express contract, the right to recover may rest upon an implied contract or an implied promise to pay. Such a contract may be inferred from the conduct, situation, or material relations of the parties and enforced by law.") (internal citation omitted), *reh'g denied*. Moreover, specific performance is a proper remedy in a breach of contract action. *See Salin Bank & Trust Co. v. Violet U. Peden Trust*, 715 N.E.2d 1003, 1007 (Ind. Ct. App. 1999) ("The grant of specific performance

directs the performance of a contract according to the precise terms agreed upon, or substantially in accordance therewith.") (internal quotation marks omitted), *trans. denied*. Specific performance is a commonly requested remedy when the allegedly breached contract involves the sale of real property, given real property's unique nature. *See Kesler v. Marshall*, 792 N.E.2d 893, 896 (Ind. Ct. App. 2003) ("Indiana courts order specific performance of contracts for the purchase of real estate as a matter of course . . . because each piece of real estate is considered unique, without an identical counterpart anywhere else in the world."), *reh'g denied*, *trans. denied*. Therefore, while Hennessy expressed personal animus against Bleier in his text messages to Mandresh and his emails to Bleier, the Prospective Buyers' use of process was proper in the regular conduct of proceedings, and therefore, Prospective Buyers were entitled to judgment as a matter of law on Midwest Holdings' abuse of process claim.[7] *See*, *e.g.*, *Reichhart v. City of New Haven*, 674 N.E.2d 27, 32 (Ind. Ct. App. 1996) (holding hazardous waste facility and facility's employee were entitled to summary judgment on city's abuse of process claim because their actions were procedurally and substantively proper), *trans. denied*.

---

[7] While the parties also dispute whether Midwest Holdings could bring its claims for abuse of process and malicious prosecution in the present lawsuit when it did not allege those claims in the federal action and Prospective Buyers' breach of contract action in state court remained unresolved, we do not need to address those questions because, as explained above, Prospective Buyers were otherwise entitled to judgment as a matter of law on Midwest Holdings' claims. *See*, *e.g.*, *State v. Royer*, 166 N.E.3d 380, 405 n.21 (Ind. Ct. App. 2021) (declining to address additional issues raised by the parties after determining certain claims were dispositive).

## 1.2 Midwest Holdings' Motion for Summary Judgment

[23] On cross-appeal, Prospective Buyers contend the trial court erred in ruling their action against Midwest Holdings was barred by res judicata. "The legal doctrine of res judicata prevents a party from having a second bite at the apple. The doctrine serves to prevent repetitious litigation of disputes that are essentially the same." *HERCO, LLC v. Auto-Owners Ins. Co.*, 167 N.E.3d 770, 774 (Ind. Ct. App. 2021) (internal citation, brackets, and quotation marks omitted). Res judicata takes the form of either claim preclusion or issue preclusion. *Id*. "Claim preclusion bars a subsequent action if the matter was or might have been litigated and decided in a prior action." *Id*. at 774-75. The party arguing for the application of claim preclusion must prove four elements:

> (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Id*. at 775. Likewise, issue preclusion bars subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit. *Id*. "Issue preclusion requires: (1) a final judgment on the merits in a court of competent jurisdiction, (2) identity of issues, and (3) the party to be estopped was a party or the privity of a party in the prior action." *Id*.

[24] Prospective Buyers assert that "if this Court finds that Midwest Holdings' counterclaims survive the doctrine of res judicata, then [Prospective Buyers']

breach of contract claim should also survive." (Appellees' Br. at 32.) However, Prospective Buyers do not cite to any case recognizing this transitive property theory of res judicata. Claim preclusion bars a subsequent action if the four elements of claim preclusion are met. *Matter of Eq. W.*, 124 N.E.3d 1201, 1209 (Ind. 2019). Here, the United States District Court for the Southern District of Indiana rendered a merits judgment in favor of Midwest Holdings on the breach of contract crossclaim Prospective Buyers brought against Midwest Holdings in the federal action. The subject of that breach of contract crossclaim was the same January 2018 aborted real estate transaction that formed the basis of Prospective Buyers' suit in Marion Superior Court. Because Midwest Holdings demonstrated all four elements for claim preclusion, Prospective Buyers' breach of contract claim was barred by res judicata, and we affirm the trial court's grant of summary judgment in favor of Midwest Holdings on that claim. *See*, *e.g.*, *Higgason v. Stogsdill*, 818 N.E.2d 486, 491 (Ind. Ct. App. 2004) (holding res judicata prohibited prisoner's claim seeking a free copy of deposition transcript when federal court had already ruled he was not entitled to a free copy), *trans. denied*.

## 2. Motion for Leave to Amend Complaint

[25] Prospective Buyers also challenge the trial court's order denying their motion for leave to amend their complaint. Indiana Trial Rule 15(A) provides that, after a responsive pleading has been served, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." We review a trial court's order denying a

plaintiff's motion for leave to amend a complaint for an abuse of discretion. *Kelley v. Vigo Cnty. Sch. Corp.*, 806 N.E.2d 824, 829 (Ind. Ct. App. 2004), *reh'g denied*, *trans. denied*. An abuse of discretion "occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law." *Rusnak v. Brent Wagner Architects*, 55 N.E.3d 834, 842 (Ind. Ct. App. 2016), *trans. denied*. We consider a number of factors in determining whether a trial court abused its discretion by denying a motion to amend the complaint, including "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment." *Palacios v. Kline*, 566 N.E.2d 573, 575 (Ind. Ct. App. 1991).

[26] Prospective Buyers assert the trial court abused its discretion when it denied their motion for leave to amend their complaint because "[t]he amended complaint averred new evidence and did not unduly prejudice Midwest Holdings." (Appellees' Br. at 18.) Specifically, Prospective Buyers contend the amended complaint was necessary because "they discovered evidence that Mr. Bleier had more than an agent-principal relationship with Midwest Holdings and that he purposefully breached the purchase agreement underlying this appeal because he received a more lucrative offer." (*Id.* at 37.) Consequently, Prospective Buyers argue they "designated new evidence warranting an amendment to their complaint. At the very least, this new allegation would

support and/or enhance [Prospective Buyers'] new allegation of promissory estoppel and a request for financial damages[.]" (*Id.*)

[27] However, as Midwest Holdings notes, Prospective Buyers' argument conflates "evidence" with "allegations." (Appellant's Reply Br. at 25.) "A complaint is a series of allegations that a plaintiff seeks to prove. Separately, evidence is the actual proof. Trial Rule 15 does not provide a mechanism for amending 'evidence' as it may be discovered over time." (*Id.*) The essential facts underlying Prospective Buyers' promissory estoppel claim were known at the time of the original complaint. Nonetheless, Prospective Buyers waited over four years to allege promissory estoppel. In addition, Prospective Buyers did not need to amend their original complaint to modify their requested relief because their original complaint requested monetary damages as an alternative form of relief to specific performance. *See* (Appellant's App. Vol. 2 at 29) ("(b) if specific performance is not granted, enter a judgment for Plaintiffs and against Defendants in an amount that will justly and fairly compensate Plaintiffs for their damages proven at trial"). The motion to amend also came after the district court ruled against the Prospective Buyers on their breach of contract crossclaim in the federal action. The proposed amended complaint sought to relitigate the 2018 real estate transaction that served as the basis of the federal lawsuit, and that would have unduly prejudiced Midwest Holdings. Therefore, we cannot say the trial court abused its discretion in denying Prospective Buyers' motion to amend their complaint. *See, e.g.*, *Hilliard v. Jacobs*, 927 N.E.2d 393, 398-401 (Ind. Ct. App. 2010) (holding trial court did

not abuse its discretion in denying plaintiff's motion for leave to file a third amended complaint when that motion was filed over three years after the original complaint was filed, asserted claims that were available at the time of the original complaint, and attempted to assert a new theory of recovery after the original theory proved unsound), *trans. denied*.

## Conclusion

[28] Prospective Buyers were entitled to summary judgment in their favor on Midwest Holdings' claims against them because probable cause supported their breach of contract claim and they did not abuse the legal process. Likewise, Midwest Holdings was entitled to summary judgment on Prospective Buyers' breach of contract claim because that claim was adjudicated by the court in the federal action. In addition, the trial court did not abuse its discretion in denying Prospective Buyers' motion to amend their complaint given Prospective Buyers' delay in bringing the amended complaint and the undue prejudice allowing the amended complaint would have caused Midwest Holdings. Accordingly, we affirm the trial court.

[29] Affirmed.

Brown, J., and Weissmann, J., concur.

ATTORNEY FOR APPELLANT AND CROSS-APPELLEE

Bradley D. Hasler
Dentons Bingham Greenebaum LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES AND CROSS-APPELLANTS

Matthew J. McGovern
Fishers, Indiana